CHRISTOPHER N. HUG vs. GARGANO & ASSOCIATES, P.C., & another.[1]

No. 09-P-55.

Suffolk. January 15, 2010. - April 2, 2010.

Present: LENK, KANTROWITZ, & VUONO, JJ.

*Attorney at Law,* Attorney-client relationship, Compensation, Contingent fee agreement. *Practice, Civil,* Attorney's fees. *Contract,* Contingent fee agreement. *Damages,* Quantum meruit. *Consumer Protection Act,* Damages, Unfair or deceptive act, Attorney's fees.

In a civil action arising out of a dispute between attorneys over fees stemming from a workers' compensation lump sum settlement, the judge made no error in calculating damages that the plaintiff (who had been discharged by the client prior to settlement) was due on a theory of quantum meruit. [524-526]

In a civil action arising out of a dispute between attorneys over fees stemming from a workers' compensation lump sum settlement, the judge provided the defendants with sufficient notice and an opportunity to be heard on a claim under G. L. c. 93A brought by the plaintiff, who had been discharged by the client prior to settlement [526-527]; further, the judge correctly concluded that the defendants' actions (i.e., making numerous misrepresentations to an administrative judge in the Department of Industrial Accidents in order to obtain his approval of the settlement without the plaintiff's knowledge) violated G. L. c. 93A [527-528], and did not abuse her discretion in awarding double rather than treble damages [528-529].

CIVIL ACTION commenced in the Superior Court Department on March 24, 2005.

The case was heard by *Margot Botsford,* J., and a hearing on an assessment of damages was had before *Janet L. Sanders,* J.

*Christopher N. Hug,* pro se.

*Thomas J. Carey, Jr.,* for the defendants.

---

[1]Paul A. Gargano. Liberty Mutual Insurance Company (Liberty Mutual) was also a named defendant below, but the judge granted its motion to dismiss all counts and cross claims against it with prejudice. Liberty Mutual is not a party to this appeal.

KANTROWITZ, J. The underlying facts of this case involving legal malfeasance are disturbing. A judge of the Superior Court found that Paul A. Gargano and Gargano & Associates, P.C. (law firm), not only knew about their client's false representations to the Department of Industrial Accidents (DIA) but actively assisted the client in making those representations. Furthermore, the judge determined that they deliberately misled the DIA judge knowing that he would rely on these misrepresentations in approving the award of attorney's fees in their favor.

*Background.* This case arises out of a dispute between two attorneys over fees stemming from a workers' compensation lump sum settlement. In December, 2005, a Superior Court judge established liability against Gargano and the law firm, on all counts of Hug's complaint for breach of contract, fraud, recovery in quantum meruit, conversion, G. L. c. 93A violation, G. L. c. 221, § 50 violation, and declaratory judgment. In 2007, a second judge awarded attorney Hug actual damages in the amount of $24,967.14, doubled under G. L. c. 93A, § 11, to $49,934.28, and attorney's fees and costs in the amount of $27,918.30, totaling $77,852.58.

Hug appealed, arguing that (1) the judge erred in calculating damages due to him in quantum meruit, and (2) the defendants' fraud on the court warranted an award of treble rather than double damages under G. L. c. 93A. On cross appeal, the defendants argue that (1) the judge erred when she ruled that Hug contributed anything to the settlement obtained, and (2) the procedures below did not provide them fair notice and a realistic opportunity to be heard on the G. L. c. 93A claim.[2]

We conclude that, while the judge certainly would have been justified in trebling damages under G. L. c. 93A, there was no abuse of discretion in not so doing. As such, we affirm.

*Facts.* The facts are taken from the judge's comprehensive findings, which are fully supported by the record. In April, 1988, Anthony Pirelli was injured in an industrial accident and began receiving workers' compensation benefits from his employer's

---

[2]Neither party has raised the issue whether a claim under G. L. c. 93A is appropriate in these circumstances. See *Stop & Shop Supermarket Co.* v. *Loomer*, 65 Mass. App. Ct. 169, 177 (2005). We therefore consider the question waived and decline to address it.

insurance carrier, Liberty Mutual Insurance Company (Liberty Mutual). On November 16, 2000, Pirelli retained Hug to represent him in his claim seeking a permanent disability settlement. He agreed to pay Hug a twenty percent contingency fee from any lump settlement payment, plus expenses. Pirelli's prior counsel had obtained a $55,000 lump sum permanent disability settlement offer from Liberty Mutual, but Hug was confident that Pirelli was entitled to more.

For a period of almost three and one-half years between November 16, 2000, and March 15, 2004, Hug represented Pirelli, providing myriad legal services related to his claim for minimal compensation.[3] The permanent disability claim was somewhat complex given that Pirelli held a job briefly during this time and his treating doctors were not willing to declare him totally disabled. Nonetheless, the judge found that by March, 2004, "Hug's work started to pay off," and Liberty Mutual increased its lump sum settlement offer to $200,000. This offer was rejected on the basis that it was still too low given Pirelli's life expectancy.

Despite Hug's efforts, on March 15, 2004, Pirelli discharged him, informing him that the law firm would be handling his case. While Hug complied with Pirelli's request to make his file available, the defendants never picked it up. On March 23, 2004, Hug filed a notice of attorney's lien, pursuant to G. L. c. 221, § 50, sending it by certified mail to the DIA, Liberty Mutual, Pirelli, and the law firm. Hug also contacted the law firm by telephone, spoke with associate Sean Beagan, and discussed a "referral fee" related to Pirelli's case. The judge found that "these conversations constituted an acknowledgment by the defendants that Hug was entitled to share in any fee from a lump sum settlement so that he could be compensated fairly for his time and expenses."

After several months, on June 14, 2004, Hug sent a second lien notice to the law firm and the DIA. In January, 2005, Hug contacted Liberty Mutual regarding Pirelli's case and learned that a lump sum settlement had been made to Pirelli months earlier. Upon inquiry at the DIA, Hug discovered that on June

---

[3]While the majority of his time was uncompensated, Hug received small, statutorily authorized payments for some of his work.

10, 2004, a DIA judge had approved a lump sum settlement of Pirelli's permanent disability claim in the amount of $300,000 and, in doing so, had authorized payment of attorney's fees to the law firm, in the amount of $58,760.[4]

In order to obtain approval of the settlement, Pirelli signed, under the "pains and penalties of perjury," a lien disclosure form certifying that there were no outstanding liens for reimbursement out of the proceeds of the settlement; he also submitted an affidavit to the DIA stating that the law firm had represented him from the inception of his claim. In her findings, the judge concluded "that the defendants made these misrepresentations so that they would not have to share any part of their contingency fee with Hug."

After learning of the settlement, Hug made repeated attempts to contact the law firm, the beneficiary of a hefty fee for less than three months of work representing Pirelli. Hug, who had incurred $967.14 in expenses, meanwhile, received nothing for his close to sixty hours of work over the course of nearly three and one-half years. Hug also contacted Liberty Mutual, who informed him that its representative had specifically brought Hug's lien to Gargano's attention and sent a facsimile copy of it to the law firm prior to releasing the check, and that the defendants had assured Liberty Mutual that they would deal directly with Hug regarding the lien. The defendants cashed the settlement check within a day of receiving Hug's second notice of lien.

Stonewalled by Gargano, Hug finally brought suit against both him and the law firm.[5] On December 21, 2005, due to Gargano's failure to answer interrogatories, see Mass.R.Civ.P. 33(a)(3), as appearing in 436 Mass. 1401 (2002), judgment entered for Hug on the liability aspect of the case. The court allowed Hug to pursue discovery with respect to his claim under G. L. c. 93A and to proceed with his claim against Liberty Mutual.[6]

---

[4]Apparently the DIA had misplaced Hug's lien notice.

[5]The complaint, which also named Liberty Mutual, see note 1, *supra*, was comprised of several counts — declaratory judgment (counts I and VIII), breach of contract (counts II and IX), recovery under quantum meruit (counts III and X), fraud (counts IV and XI), violation of G. L. 93A (counts V and XII), conversion (counts VI and XIII), and a violation of G. L. c. 221, § 50 (counts VII, XIV, and XV).

[6]The December 21, 2005, order read: "After hearing under [Mass.R.Civ.P.] 33(a)(3) it is ordered the liability of Gargano & Associates PC [and Paul A.

At a February 21, 2007, scheduling hearing, after some objection from Gargano, the judge confirmed that liability was established by the earlier order and set a final date of March 27, 2007, to determine damages.

Gargano did not attend the March 27 hearing, sending an associate, Beagan, in his place. At the hearing, Beagan called Vincent Tentindo as an expert on workers' compensation law to testify regarding Hug's entitlement to any fees from Pirelli's settlement. Neither Beagan nor Tentindo disclosed to the court that Tentindo's previous firm had represented Pirelli in an earlier stage of his claim, and the judge noted that this omission affected the weight she gave to Tentindo's testimony.

At the hearing, Hug submitted affidavits outlining the hours he spent on Pirelli's case and the hours spent representing himself on his claims against Gargano and the law firm; he also testified on his own behalf regarding his contributions to the settlement and the basis for his claim for multiple damages under c. 93A.

With these facts in mind, we turn to the issues on appeal.

*Quantum meruit.* Hug claims that, as a result of the role he played in increasing Pirelli's settlement offer prior to his discharge, he is entitled to a quantum meruit recovery of seventy-five percent of the $58,760 contingency fee paid to the defendants, to wit, an award of $44,070.

---

Gargano] is established but the pl[aintiff] is entitled to pursue discovery with respect to his claim under G. L. c. 93A." This order had been drafted by a judge who was no longer involved in the case. At a February 21, 2007, status conference before the judge who presided over the hearing on damages and ultimately ordered entry of judgment in the case, the parties argued over the significance of this order. In a memorandum issued shortly after the February, 2007, status conference, the judge stated that the December 21 order "establish[ed] liability of the defendants . . . on all counts against them. The basis for this decision was that these two defendants had failed to respond to plaintiff's interrogatories, served on April 11, 2005, and had ignored additional filings by the plaintiff requesting that final judgment enter for this failure to respond. At the request of the plaintiff, the Court permitted plaintiff to conduct further discovery with respect to his damages on the 93A claim against the defaulted defendants."

The defendants speculate on appeal that the "separate provisions [in the December 21, 2005, order] relating to the 93A count suggest that no default judgment on that count was intended," but they ultimately acknowledge the second judge's ruling "that the default judgment encompassed liability on [the 93A] claim as well." We conclude that the December 21, 2005, order established the defendants' liability on all counts of the complaint, and left open (as between the parties taking part in this appeal) only the question of the plaintiff's damages.

While a client has "the unquestioned right" to discharge counsel, he has the concomitant obligation to compensate his attorney "for the fair and reasonable value of services and skills expended on [his] behalf, on the theory of quantum meruit." *Malonis* v. *Harrington*, 442 Mass. 692, 696-697 (2004). "Strictly speaking, the termination of the attorney's engagement ends the attorney's right to recover on the contingent fee agreement itself," but "[t]he ability of an attorney to recover fees under a theory of quantum meruit arising out of a contingent fee agreement is settled." *Zabin* v. *Picciotto*, 73 Mass. App. Ct. 141, 151 (2008) (citations and internal quotation marks omitted). "[W]hile a party does not recover on the contract itself under quantum meruit, a court may look to the terms of the underlying contract to help determine appropriate recovery under quantum meruit . . . [as well as to] the customary [factors] applicable in measuring a legal fee: the special skills which may have been brought to bear, the complexity of the case, the size of the case in terms of dollars, the caliber of the services, the fees usually charged for work of the kind involved, the time spent, and the success achieved." *Ibid.* (citations and internal quotation marks omitted).

In determining the fair value of an attorney's quantum meruit recovery, "[t]he question of what is fair and reasonable compensation for legal services rendered is one of fact for a trial judge to decide." *Malonis, supra* at 699, quoting from *Mulhern* v. *Roach*, 398 Mass. 18, 23 (1986). Such findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." *Mulhern, supra* at 23, quoting from Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

Here, the judge heard the witnesses and evaluated Hug's efforts on Pirelli's behalf, which contributed to securing the lump sum settlement, entitling him to recovery under quantum meruit. The judge found that Hug "is a lawyer with twenty-two years [of] experience, most of that in the worker's compensation area." She further found that Hug's representation of Pirelli was "effective," noting that, in addition to other beneficial, uncompensated legal services rendered over an almost four-year period, Hug increased the initial Liberty Mutual settlement offer from $55,000 to $200,000. The judge concluded that the fair and reasonable compensation for Hug's representation was $24,000, a figure

reached by taking Hug's hourly rate ($200), and multiplying it by the number of uncompensated hours Hug spent assisting Pirelli (sixty hours), then doubling that amount ($12,000 times two) "in recognition of the part that Hug played in negotiating the lump sum settlement." The judge also awarded Hug $967.14 in costs.

While the judge could have adopted Hug's position, there was no error in her calculation. In reaching the initial $12,000 figure, she properly considered Hug's skills and experience, his usual fees, and his time spent on Pirelli's claim. She further recognized the complexity and dollar value of Pirelli's case, the caliber of the services Hug delivered, and the degree of success he achieved with regard to the total settlement, doubling his total fee of $12,000 to an award of $24,000. Contrary to Hug's assertion, the judge did not focus solely on the hours billed, as is reflected by the fact that she doubled the hourly award in recognition of his more intangible contributions to the settlement. As Hug's expenses of $967.14 were uncontested below, we discern no error in the judge's award of $24,967.14.[7]

*G. L. c. 93A damages.* The principles of G. L. c. 93A, § 11, are well known and need not be repeated in detail. Here, the sole issue is whether the damages should have been trebled as opposed to doubled.[8] "Although neither c. 93A nor our cases construing that statute provide a trial judge with clear guidance in deciding how damages should be multiplied, the decision is

---

[7]The defendants' assertion that Hug was not entitled to compensation based on attorney's fees restrictions within the workers' compensation statute, G. L. c. 152, § 13A, is without merit. The judge acknowledged statutory payments made to Hug over the course of representing Pirelli and focused her quantum meruit analysis on the role Hug played in increasing the lump sum settlement. Hug's original twenty percent contingency fee was permissible under the statute, and the defendants were paid twenty percent of the final settlement. The judge simply established the fair and reasonable value of Hug's contributions to the ultimate settlement payment using well-settled quantum meruit principles.

[8]The defendants' argument that the procedures below did not provide them with fair notice and a realistic opportunity to be heard on the c. 93A claims is without merit. Hug's complaint included c. 93A counts against both Gargano and the law firm; both denied the claims in their answers. The defendants defaulted on these claims after failing to respond to multiple discovery requests. Their default and the consequences of that ill-advised strategy precluded them from relitigating the issue of liability on all counts of the complaint. See note 6, *supra.*

to be based on the egregiousness of the defendant's conduct." *Brown* v. *LeClair*, 20 Mass. App. Ct. 976, 980 (1985) (citation and internal quotation marks omitted). See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 853 (1983) ("Based on the egregiousness of each defendant's conduct, the trial judge may assess between double and treble damages"); *Kattar* v. *Demoulas*, 433 Mass. 1, 16 (2000) ("Ultimately, c. 93A ties liability for multiple damages to the degree of the defendant's culpability").

At the hearing, Hug testified and presented evidence of his efforts to resolve the fee matter with the defendants, as well as their misrepresentations and evasions. Gargano did not attend the hearing, and his associate Beagan did not object to Hug's evidence or present evidence contradicting Hug's claim that the defendants made wilful misrepresentations to the DIA judge and were evasive when Hug attempted to resolve the matter.[9] When questioned by the judge regarding Hug's c. 93A claims, Beagan merely objected on the ground that Gargano was not present at the hearing.

As noted by the judge, Gargano had sufficient notice of the hearing and his decision not to attend was his own choice. As such, both Gargano and the law firm had ample notice and opportunity to be heard.[10]

Without question, the misrepresentations made to the DIA judge were unfair and deceptive as a matter of law. "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some

---

[9]The defendants' argument that Hug should have filed the attorney's lien on a different form with the DIA rings hollow. Certified mail receipts for both of Hug's notices of the lien were signed by someone in the defendants' office; the defendants also received inquiry from Liberty Mutual on the same subject. Unquestionably they were on notice of the lien.

[10]While Gargano argued at the scheduling conference that he would be on vacation during the hearing, the judge noticed the frequency with which that claim had been used in the past, as well as other dilatory tactics. A more commonsense reason for Gargano's nonappearance was noted by the judge: "I'm not sure what [Gargano] could possibly say . . . with respect to defending himself against some of the signed and sworn-to documents representing to Courts and the [DIA] that no lien existed. So there may be, in fact, a very simple explanation as to why he chose to default, that is, not answer interrogatories. You'd have to make certain statements, why he was difficult to depose, and why he chose not to be here today. I'm inclined to think that perhaps Mr. Hug is right, that he does better not being here than he would if he were here, because he'd have to answer some very difficult questions under oath from Mr. Hug."

unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Munshani* v. *Signal Lake Venture Fund II, LP,* 60 Mass. App. Ct. 714, 718 (2004), quoting from *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.,* 418 Mass. 596, 598 (1994). All of the evidence supports the judge's conclusion that the defendants "made numerous misrepresentations or material omissions of fact . . . to a judge in order to obtain his approval of the lump sum settlement without Hug's knowledge," amounting to "an unfair and deceptive business practice."

Furthermore, there was no error in the judge's conclusion that the defendants' behavior was "intentional and wilful." We need not repeat the abuses here; suffice it to say that based on their intentional misrepresentations to the DIA judge and Liberty Mutual, their refusal to respond to Hug's reasonable offers to resolve the case, and their repeated attempts to thwart discovery, the defendants exhibited intentional and wilful misconduct.

Thus, we are left with the question of the degree of multiple damages. The language of the statute itself gives the trial judge, who is in the best position to view the evidence and assess the credibility of the witnesses, discretion in determining the award.[11] While Hug may be correct in noting that the behavior exhibited here was egregious, and while we might have acted differently, we cannot discern an abuse of discretion in awarding double rather than treble damages.[12] The judge, by her actions, awarded Hug $77,852.58,[13] far in excess of the $58,760 he would have

---

[11] "If the court finds for the petitioner, recovery shall be in the amount of actual damages; *or up to three,* but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two." G. L. c. 93A, § 11, inserted by St. 1972, c. 614, § 2 (emphasis added).

[12] One authority has suggested that courts "are more reluctant to award treble damages in commercial plaintiff cases" based on larger actual damages and "the relative sophistication of § 11 plaintiffs," noting that "an award of double damages plus an award of attorneys' fees (which award is also often much larger in a commercial case) meet the functions of 93A both to deter unfair and deceptive practices, and to create incentives for victims to seek the remedies available under 93A." Gilleran, Law of Chapter 93A § 11.11 (2d ed. 2007).

[13] This includes attorney's fees of $27,918.30, which were also properly awarded notwithstanding that Hug represented himself. See *Robbins* v. *Krock,* 73 Mass. App. Ct. 134, 136-137 (2008).

received had he remained on the case and achieved the same ultimate result.

*Conclusion.* With some reservation given the behavior and actions of the defendants, we hold that the judge did not abuse her discretion in ordering double rather than triple damages. As such, we affirm the award of actual damages in the amount of $24,967.14, doubled under G. L. c. 93A, § 11, to $49,934.28, and attorney's fees and costs in the amount of $27,918.30.

While Hug did not specifically request appellate attorney's fees and costs in his brief, he did so at oral argument. We allow his motion. See *Lowell* v. *Massachusetts Commn. Against Discrimination*, 65 Mass. App. Ct. 356, 358 (2006). In accordance with the procedure outlined in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004), Hug should, within fourteen days, submit an application for appellate attorney's fees and costs, with any supporting materials. The defendants may then, within ten days, respond. See *Murphy* v. *Miller*, 75 Mass. App. Ct. 210, 219 (2009).[14]

Pursuant to S.J.C. Rule 3:09, Canon 3(D)(2), as appearing in 440 Mass. 1301, 1317 (2003), the clerk of the Appeals Court shall forward a copy of this opinion to the Bar Counsel's office of the Board of Bar Overseers.

*Judgment affirmed.*

[14]While our decision in no way rests upon past problems involving the defendant and his firm, we are, nonetheless, troubled by them. See *Gargano & Assocs., P.C.* v. *John Swider & Assocs.*, 55 Mass. App. Ct. 256 (2002) (affirming summary judgment on G. L. c. 93A arbitration award in favor of defendants against both Gargano and law firm for failure to pay contractor); *Gargano* v. *Barnstable Conservation Commn.*, 58 Mass. App. Ct. 1106 (2003) (unpublished) (affirming dismissals of Gargano's appeal of conservation commission violation on procedural grounds for his failure to file within statutory deadlines and exhaust administrative remedies); *Gargano & Assocs.* v. *Massachusetts Commn. Against Discrimination*, 74 Mass. App. Ct. 1128 (2009) (unpublished) (finding that law firm failed to provide reasonable accommodation to a temporarily disabled employee and wrongfully terminated her employment); *Gargano vs.* Barnstable Conservation Commn., Superior Court, No. MICV2003-03141 (July 14, 2008) (noting the ten-year period of ongoing litigation and ordering Gargano to cease unauthorized activity within protected wetlands area); Thomas Graves Landing Condominium Trust *vs.* Gargano, Superior Court, Nos. MICV2004-04613, SUCV2004-05018 (June 16, 2008) (noting Gargano's "wholly non-credible trial testimony" and ordering him to pay $230,408 for a "knowing and intentional" consumption of unbilled heating gas between 1996 and 2004).