555 P.2d 187 (1976)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Richard HARFMANN, Defendant-Appellant.
No. 75-219.
Colorado Court of Appeals, Div. III.
May 27, 1976.
Rehearing Denied July 1, 1976.
Certiorari Denied October 18, 1976.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G.
*188 Donovan, Sol. Gen., John R. Rodman, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Ralph S. Josephsohn, Longmont, for defendant-appellant.
Richard Harfmann, pro se.
Selected for Official Publication.
PIERCE, Judge.
Defendant appeals from convictions on two counts of sale of a narcotic drug, and one charge of introducing contraband, on the ground that the trial court erred in permitting introduction of certain evidence despite defendant's motion to suppress. We reverse.
An undercover police officer obtained information from an unidentified informant that defendant, then a practicing attorney, would deliver narcotic drugs to an incarcerated client of his upon his next visit to the county jail. The undercover officer remained in contact with the informant over the next three days, conversing with the informant at least twice a day. During this period, the informant continued to asert knowledge of defendant's impending criminal activity, but was never able to give the undercover officer the exact time at which defendant would attempt the transfer. The officer in turn relayed this information to the sheriff's office, but no attempt was ever made to obtain an arrest or search warrant on the basis of information pertaining to defendant. On the night of the second day following receipt of the original tip, defendant attempted to see the client, and was told by the officer on duty to return the next morning, "preferably" at about 11:00 A.M. The next morning, at approximately 10:30 A.M., the informant notified the sheriff's department that defendant would visit his client at 11:00 A.M., and would attempt to transfer the narcotics to the prisoner at that time.
Defendant appeared at the jail at approximately 11:00 A.M. for the announced purpose of consultation with his client. He was purposely escorted to a particular room where the client was already waiting. Neither man was subjected to a search prior to this meeting. Cf. People v. Thompson, 185 Colo. 208, 523 P.2d 128; Larkin v. People, 177 Colo. 156, 493 P.2d 1. The room had no windows, other than an extremely small portal in the door, and the two men were left alone in the room, the door closed and locked, immediately after defendant entered the room. A mirror centrally located in the room, however, was constructed in such a manner that police officers in an adjacent room could observe transactions taking place in the consultation room. By prearrangement, several officers were secreted in the other room for the express purpose of observing what transpired between defendant and his client.
According to those officers, defendant first examined the premises carefully, then handed a small envelope and a cigarette to his client, who proceeded to conceal the items on his person. Following his consultation with his client, defendant was permitted to leave the jail without interference. The client, however, was immediately searched, and the envelope and cigarette, which contained minute quantities of cocaine and marijuana, were found on him. Defendant was later arrested, pursuant to a warrant, and was charged with the crimes of which he was convicted.
Prior to trial, defendant moved to prevent the introduction of testimony pertaining to the alleged transfer, asserting that the surreptitious visual observation of the consultation between attorney and client constituted an illegal search. Although the trial court agreed with defendant that the clandestine viewing of defendant's activities constituted a search, it further found that exigent circumstances justified this warrantless intrusion such that testimony as to the visual search would be admissible at defendant's trial. We agree with the defendant that the trial court erred in permitting testimony pertaining to this visual observation to be introduced at trial.

I.
The first issue to be addressed is whether the visual observation by the officers constituted a "search" in the constitutional sense. We hold that it did.
*189 The constitutional prohibitions against unreasonable searches and seizures protect those who have a reasonable expectation of privacy. People v. Gallegos, 179 Colo. 211, 499 P.2d 315; Zamora v. People, 175 Colo. 340, 487 P.2d 1116. See also Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One who entertains an expectation of privacy that society is prepared to recognize as reasonable is fully protected from governmental intrusions which do not comport with that expectation, even though no actual physical trespass occurs. Katz v. United States, supra; People v. Becker, Colo., 533 P.2d 494. Thus, a visual observation which infringes upon a person's reasonable expectation of privacy constitutes a search. People v. Triggs, 8 Cal.3d 884, 106 Cal.Rptr. 408, 506 P.2d 232. See also People v. Boorem, 184 Colo. 233, 519 P.2d 939. The question here is whether the visual observation of defendant in this case violates defendant's reasonable expectation of privacy.
We agree with the trial court's finding of fact that defendant had an expectation of privacy with regard to the apparently secure room to which he was led for the purpose of consultation with his client. We further concur with the trial court's conclusion that defendant's expectation of privacy was reasonable. The observing officers were not in a place where they had any right to be since their covert presence and observation represented an impermissible intrusion into an attorney-client consultation, a confidential relationship which must continue to receive unceasing protection even in our institutions of incarceration. Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384. See also North v. Superior Court, 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305. In this respect, the surreptitious observation here differs drastically from the situation where a prisoner's conversations are merely overheard inadvertently by a prison official, and hence, deserves different treatment. People v. Gallegos, supra. See also Lanza v. New York, supra. Thus, it is our conclusion that the visual observation conducted by the officers constituted a search for constitutional purposes. See People v. Weisenberger, 183 Colo. 353, 516 P.2d 1128.

II.
We now turn to the issue of whether or not this warrantless search was reasonable. Except for a few well delineated exceptions, warrantless searches are presumptively illegal. People v. Vaughns, 182 Colo. 328, 513 P.2d 196. Here, the trial court found exigent circumstances which permitted the clandestine observation and excused the non-procurement of a warrant. We do not agree that exigent circumstances existed which made the search conducted here a reasonable one.
The sheriff's department had been aware for several days that the next time defendant came to the jail he would attempt to transfer contraband to his client. Knowledge of the exact time of the expected visit would have added little, if anything, to the sum of circumstances constituting probable cause for the issuance of a warrant. Moreover, the occurrences of the previous night gave the sheriff's department actual notice of the impending morning visit of defendant many hours prior to receipt of the informant's final tip, and thus, gave the department ample opportunity to obtain a warrant prior to the defendant's arrival at the jail, either for the search of defendant's person prior to his consultation with his client, or perhaps even for the visual observation procedure actually utilized. The availability of other, less intrusive procedures for the maintenance of jail security, see People v. Thompson, supra; Moore v. People, 171 Colo. 338, 467 P.2d 50, and the fact that the officers had sufficient time to resort to the warrant procedure, see DeLaCruz v. People, 177 Colo. 46, 492 P.2d 627, militate against a finding that the search actually conducted here was reasonable. Thus, we hold that the clandestine visual observation of defendant and his client *190 constituted an illegal search, and hence, testimony pertaining to the incident should not have been admitted into evidence at defendant's trial.
Judgment reversed and the cause remanded for a new trial.
SMITH and BERMAN, JJ., concur.