The PEOPLE of the State of
Colorado, Complainant,

v.

Richard HARFMANN,
Attorney-Respondent.

No. 81SA197.

Supreme Court of Colorado,
En Banc.

Nov. 2, 1981.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Richard Harfmann, Boulder, pro se.

ERICKSON, Justice.

On January 29, 1975, the respondent, Richard Harfmann, was suspended from the practice of law in the State of Colorado after he was convicted of three felonies and pending the completion of disciplinary proceedings against him. C.R.C.P. 259(F). We now disbar the respondent and order that the $694.22 in costs incurred in the disciplinary proceedings be paid to the Clerk of the Supreme Court within ninety days.

I.

The respondent, Richard Harfmann, was admitted as a member of the bar of this Court on June 3, 1972. His overzealous and misdirected representation of a defendant in a criminal case provided the factual basis for the initial disciplinary complaint. The complaint asserted that the respondent's undignified and discourteous conduct was degrading to the tribunal before which he appeared. Specifically, his scurrilous, critical, and insulting chastisement of the trial judge for asserted incompetence were alleged to be violations of DR 7–106(C)(6).[1] He was also charged with knowingly making false accusations against the trial judge in violation of DR 8–102(B).[2]

1. DR 7–106(C)(6) provides:

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:"

\* \* \* \* \* \*

"(6) Engage in undignified or discourteous conduct which is degrading to a tribunal."

2. DR 8–102(B) provides:

"A lawyer shall not knowingly make false ·accusations against a judge or other adjudicatory officer."

Thereafter, the complaint was amended to reflect that the respondent was convicted of three felonies in December 1974 in the Boulder District Court.[3] The respondent's conviction resulted from a transaction with a client in the Boulder County Jail. Prior to the respondent's appearance at the jail, an informant advised the sheriff's office that Harfmann intended to deliver narcotics to his client, who was an inmate in the jail. As a result, the sheriff's office arranged for the respondent to meet his client in the inmate's locker room which was equipped with a two-way mirror. Two members of the sheriff's department were in the storage room behind the two-way mirror, and saw Harfmann hand his client a cigarette and a small paper envelope. The cigarette was later taken from the client and was determined to be marijuana. The paper envelope, which contained cocaine, was found in the heel of the client's shoe.

The respondent's felony convictions resulted in additional disciplinary charges and suspension pursuant to C.R.C.P. 258 and 259(F). *See People v. McGonigle*, 198 Colo. 315, 600 P.2d 61 (1979). Before the charges against the respondent could be resolved by the Grievance Committee, however, the respondent obtained a reversal of his convictions in the court of appeals. *People v. Harfmann*, 38 Colo.App. 19, 555 P.2d 187 (1976).[4] Thereafter, the complaint before the Grievance Committee was amended to charge that the respondent not only introduced contraband into the Boulder County Jail contrary to the laws of the State of Colorado, but also violated C.R.C.P. 241 and DR 1–102(A)(3), (4), (5), and (6).[5]

The respondent appeared *pro se* before the Grievance Committee and answered the disciplinary complaints in a series of hand-written responses. His answer and other pleadings vilified members of the Grievance Committee and contained scurrilous, profane, and disrespectful language which demeaned the Grievance Committee, the district judge who presided at respondent's trial, and this Court. The Grievance Committee found that the allegations of misconduct were proven by clear and convincing evidence. At the conclusion of the hearing, the Grievance Committee recommended disbarment and the payment of costs. We agree with its recommendation.

## II.

Every member of the bar of this Court takes an oath to uphold the law and to support the Constitutions of the United States and of Colorado. C.R.C.P. 220 and 241(A). As an officer of this Court, a lawyer is charged with obedience to the law, both in and out of court. A lawyer cannot ignore or fail to comply with the high ethical and moral standards which are imposed on all members of the legal profession. *People v. Weeber*, 26 Colo. 229, 57 P. 1079 (1899); C.R.C.P. 241. In this case, the respondent's conduct not only constitutes a violation of the Code of Professional Responsibility, but also involves felonious conduct which was clearly and convincingly proven by the testimony of sheriff's officers. The proof of the respondent's guilt of the narcotic offenses was overwhelming.

■ The court of appeals reversed the respondent's convictions in the criminal case, and concluded that constitutional violations of privacy triggered application of the exclusionary rule. *People v. Harfmann, supra.* The respondent contends that both the United States and the Colorado Consti-

---

**3.** Harfmann was convicted of two counts of sale of a narcotic drug (*Cannabis sativa L.*), and one count of introducing contraband in the first degree into a detention facility.

**4.** A subsequent conviction of other felony drug offenses was affirmed on appeal, but is not the subject of this disciplinary proceeding. *People v. Harfmann*, Colo.App., 633 P.2d 500 (1981).

**5.** DR 1–102(A)(3), (4), (5), and (6) provide: "A lawyer shall not:"

\* \* \* \* \* \*
"(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

tutions not only prohibit the use of the evidence obtained by the sheriff's department in a criminal proceeding, but also dictate that we exclude the evidence in these disciplinary proceedings. *U.S.Const.* amends. IV and XIV; *Colo.Const.* Art. II, sec. 7. We disagree with the respondent's contention that disciplinary proceedings, which are *sui generis,* must be afforded the same constitutional safeguards which are provided to an accused in a criminal case. We conclude that the exclusionary rule should not be extended to provide a shield to a lawyer charged in a disciplinary complaint.[6]

### A.

■ Two grounds exist for the exclusionary rule. First, unlawful police conduct is theoretically deterred by exclusion of evidence which is the fruit of an unlawful search. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The deterrent function provides the factual basis for the exclusionary rule. Second, the normative function of the rule is predicated on the theory that the exclusion of unlawfully seized evidence prevents the court from placing its imprimatur upon overzealous police action. *See* Oaks, *Studying the Exclusionary Rule in Search and Seizure,* 37 U.Chi.L.Rev. 665 (1970); Gottlieb, *Feedback from the Fourth Amendment: Is the Exclusionary Rule an Albatross Around the Judicial Neck,* 67 Kentucky L.J. 1007 (1978– 1979); Ball, *Good Faith and the Fourth Amendment: The Reasonable Exception to the Exclusionary Rule,* 67 J.Crim.L. and Criminology 635 (1978).

No "bright line" exists as an answer to judicial interpretation of the exclusionary rule. *Compare, New York v. Belton,* —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) with *Robbins v. California,* —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981). The Supreme Court of the United States in both *Robbins* and *Belton* has retreated from a case-by-case analysis of Fourth Amend-

ment search and seizure issues in an effort to establish a "bright line" rule. Moreover, the exclusionary rule was specifically declared to be inapplicable to grand jury proceedings and to evidence offered to obtain an indictment. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Evidence seized in violation of the Fourth Amendment can be used for impeachment purposes. *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). Moreover, evidence is not suppressed in a civil proceeding by one sovereign merely because law enforcement agents in another sovereign failed to comply with the proscriptions of the Fourth Amendment. *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

### B.

■ Neither the deterrent nor the normative functions of the rule provide a basis for concluding that the exclusionary rule should be available to a lawyer in a disciplinary proceeding. This Court has the duty to police the bar and to protect the public against those lawyers who disregard their ethical and professional obligations to the public and to the court. In every disciplinary proceeding a lawyer is entitled to procedural due process, but those rights do not extend so far as to guarantee the full panoply of rights afforded to an accused in a criminal case. *See In Re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *Emslie v. State Board of California,* 11 Cal.3d 210, 113 Cal.Rptr. 175, 520 P.2d 991 (1974).

In this case, the normative function of the exclusionary rule supports the admission of the evidence in a disciplinary proceeding. In disciplinary proceedings, the court's primary duty is to protect the public and the legal profession from unscrupulous lawyers. We will not permit the exclusionary rule to be invoked in a disciplinary proceeding to insulate a lawyer from the

---

**6.** The exclusionary rule was made applicable to the states in *Mapp v. Ohio,* 367 U.S. 643, 81

S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

consequences of his criminal acts.[7] Here, the respondent has been afforded Fourth Amendment protection against punishment for his criminal acts, but we cannot close our eyes to his unprofessional conduct as an indication of his unfitness to practice law. He abused the privilege granted to lawyers to enter a jail to confer with a client by delivering narcotics instead. The court's primary function is to search for the truth. Evidence which clearly and unequivocally establishes unlawful conduct of a lawyer should be admissible if the official misconduct does not shock the conscience of the court or is not in bad faith. *See People v. Ressin*, Colo., 620 P.2d 717 (1980).

### C.

▮ In our view, the very nature of disciplinary proceedings dictates that the exclusionary rule should not bar the admission of relevant evidence. C.R.C.P. 241(B)(3) specifically provides that conviction of a criminal offense shall not be a condition precedent to suspension or to the institution of disciplinary proceedings. Moreover, an acquittal does not constitute a bar to later disciplinary proceedings. C.R.C.P. 241(B)(3) and 259(E). *People v. Mead*, 29 Colo. 344, 68 P. 241 (1902); Annot., 76 A.L.R.3d 1028 (1975). Disciplinary proceedings, in our view, are not criminal and are best defined by the *ABA, Standards for Lawyer Discipline and Disability Proceedings*, § 1.2, which provides:

> "*Nature of Proceedings.* Lawyer discipline and disability proceedings are *sui generis*, and rules of procedure for civil, criminal, and administrative proceedings do not automatically apply."

*See also, People v. Morgan*, 194 Colo. 260, 574 P.2d 79 (1977); *People v. Roberts*, 184 Colo. 358, 520 P.2d 133 (1974); *People v. Howard*, 147 Colo. 501, 364 P.2d 380 (1961).

Thus, we must make a case-by-case analysis of every disciplinary complaint to determine whether a particular rule of civil or criminal law should be applied. *See Emslie v. State Bar of California, supra.* Admittedly, disbarment of a lawyer is a punishment or penalty which entitles a lawyer to procedural due process. *In Re Ruffalo, supra.* If law enforcement authorities pursue conduct which shocks the conscience of this Court or establishes bad faith, good reasons exist for the exclusion of the evidence at a disciplinary hearing. *See People v. Ressin, supra. Compare, United States v. Williams*, 622 F.2d 830 (5th Cir. 1980). Neither situation exists in this case.

### III.

The differences between a criminal case and disciplinary proceedings, which are intended to maintain the high standards of the legal profession while protecting the public against unethical lawyers, are quite obvious. The deterrent function of the exclusionary rule has been met when the evidence is denied admissibility in the criminal case. The fact that a lawyer escapes criminal punishment because of police misconduct does not guarantee him the right to maintain his position as an officer of this Court. According to the record, Harfmann admitted at trial that he handed his client a cigarette and an envelope in the locker room of the Boulder County Jail, but claimed that he was unaware that the cigarette was marijuana and that the envelope contained cocaine. The testimony of the sheriff's officers, who observed the respondent in the jail, clearly refute his claim. The respondent's testimony was impeached by the evidence before the Grievance Committee; the reliability of the sheriff officers' testimony was not disputed. *See United States v. Havens, supra.*

---

**7.** The respondent's delivery of contraband to his client in the inmate's locker room was the sole basis for the sheriff officers' testimony at trial. No conversations were overheard, recorded, or used against the respondent in either his criminal trial or in these disciplinary proceedings. Under the circumstances, the visual observations of the officers do not warrant the invocation of the exclusionary rule in a disciplinary proceeding for what may constitute violations of either the Fourth or Sixth Amendments in a criminal proceeding. *Cf. Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962); *North v. Superior Court*, 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972).

The Grievance Committee's recommendations for the respondent's criminal misconduct not only justifies, but requires, disbarment. In viewing the charges relating to the respondent's disparagement of the trial judge in the defense of a criminal case, we note that the respondent has continually demonstrated his total lack of respect for all courts and judicial officers and has further proven his total unfitness to practice law.

Accordingly, the respondent, Richard Harfmann, is disbarred, and we direct that his name be stricken from the roll of lawyers authorized to practice before this Court. Further, he is ordered to pay costs in the amount of $694.22 to the Clerk of the Supreme Court within ninety days from the date of this decision.