The PEOPLE of the State of Colorado, Complainant

v.

Paul A. GARGANO, Respondent.

No. 12PDJ012.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

July 6, 2012.

**ORDER DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, GRANTING COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT, AND IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.21**

This matter is before the Presiding Disciplinary Judge ("the Court") on cross-motions for summary judgment filed by Paul A. Gargano ("Respondent"), who is representing himself pro se, and Kelly A. Murphy, Office of Attorney Regulation Counsel ("the People").[1]

Respondent filed "Respondent's Motion for Summary Judgment" on March 26, 2012.[2]

---

1. The People filed their complaint in this matter on January 31, 2012. Respondent filed an answer on February 15, 2012, followed by an amended answer on March 14, 2012. He filed the record of the Massachusetts disciplinary proceeding underlying the People's complaint on March 14, 2012.

2. Respondent's motion comprises three separate documents, all entitled "Respondent's Motion for Summary Judgment," the first of which bears the

On April 17, 2012, the People filed "Complainant's Response in Opposition to Respondent's Motion for Summary Judgment," followed on April 30, 2012, by "Complainant's Motion for Summary Judgment."[3] After Respondent filed "Repspondents [sic] Opposition to Petition for Summary Judgement" on May 15, 2012,[4] the People filed "Complainant's Reply in Support of Motion for Summary Judgment" on May 22, 2012.

## I. *LEGAL STANDARDS*

C.R.C.P. 56(c) provides that summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[5] Summary judgment permits the parties to pierce the formal allegations of the pleadings and save the time and expense involved in a trial when, as a matter of law and based on undisputed facts, one party could not prevail.[6]

The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[7] This burden is satisfied by demonstrating that there is an absence of evidence in the record to support the non-moving party's case.[8] Once the moving party meets this initial burden, the burden shifts to the nonmoving party to establish that there is a triable issue of fact.[9] The nonmoving party cannot rest upon mere allegations or denials; rather, it must present specific facts showing the existence of a genuine and material factual dispute.[10]

In reciprocal discipline proceedings, "a final adjudication in another jurisdiction of misconduct constituting grounds for discipline of an attorney shall .... conclusively establish such misconduct."[11] C.R.C.P. 251.21 directs the Court to order the same discipline as was imposed in a sister jurisdiction unless certain exceptions exist.[12] As relevant here, the same discipline should be

heading "Statement of Undisputed Facts," the second of which contains the heading "Statement of Legal Elements," and the third of which lacks a heading and appears to be Respondent's primary motion. Respondent attaches to the motion nine exhibits consisting of portions of uncertified transcripts, an unauthenticated letter, and an unauthenticated affidavit. Because the People do not appear to object to the sufficiency of these exhibits in their response, the Court will take into account all exhibits attached to Respondent's motion in making its ruling. *See Woodward v. Bd. of Dirs. of Tamarron Ass'n of Condo. Owners, Inc.*, 155 P.3d 621, 624 (Colo.App.2007).

**3.** The People attach to their response an uncertified copy of the docket in the Massachusetts Board of Bar Overseers of the Supreme Judicial Court ("BBO") disciplinary proceeding against Respondent; an uncertified copy of the hearing committee's hearing report filed with the BBO on September 17, 2010; and a certified copy of Justice Robert J. Cordy's memorandum of decision in the case, issued on July 6, 2011. The People attach to their motion for summary judgment copies of the same documents, as well as a copy of the BBO's board memorandum and a copy of the published decision in *In re Gargano*, 460 Mass. 1022, 957 N.E.2d 235 (2011). Respondent has not objected to the sufficiency of these exhibits, and the People represent that he himself provided the copy of the hearing report, so any objections are thus deemed waived. *See Woodward*, 155 P.3d at 624; *Johnson v. Mountain Sav. & Loan Ass'n*, 162 Colo. 474, 477, 426 P.2d 962, 963 (1967). The Court therefore considers these documents in making its decision.

**4.** Respondent attaches to his opposition only an unsworn, uncertified copy of an appeal brief he apparently previously filed with the BBO. In light of the People's opposition to this exhibit in their reply brief, the Court declines to consider the exhibit in ruling upon the People's motion. *See Cody Park Prop. Owners' Ass'n, Inc. v. Harder*, 251 P.3d 1, 4 (Colo.App.2009). Even were this exhibit properly before the Court, it would lack persuasive force because it is irrelevant to the standards set forth in C.R.C.P. 251.21.

**5.** *See Civil Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo.1991); *Jones v. Dressel*, 623 P.2d 370, 373 (Colo.1981).

**6.** *Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 238 (Colo.1984); *A–1 Auto Repair & Detail, Inc. v. Bilunas–Hardy*, 93 P.3d 598, 603 (Colo.App.2004).

**7.** *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo.1987).

**8.** *Id.*

**9.** *Id.* at 713.

**10.** *Id.*

**11.** C.R.C.P. 251.21(a).

**12.** *See also People v. Meyer*, 908 P.2d 123, 124 (Colo.1995).

imposed unless it is determined that, as Respondent alleges, the procedure followed in Massachusetts did not comport with due process requirements.[13]

## II. UNDISPUTED MATERIAL FACTS [14]

Respondent has taken the oath of admission, was admitted to the bar of the State of Colorado on July 14, 1994, and is registered upon the official records under attorney registration number 24262.[15] He is thus subject to the jurisdiction of the Court in these disciplinary proceedings.[16] At present, Respondent is on inactive status in Colorado.[17] He has also been admitted to the bar of the Commonwealth of Massachusetts.[18]

On August 27, 2009, Massachusetts bar counsel filed a petition for discipline against Respondent with the Massachusetts Board of Bar Overseers of the Supreme Judicial Court ("BBO").[19] A four-day hearing regarding Respondent's alleged violations of the Massachusetts Rules of Professional Conduct commenced before the hearing committee on January 20, 2010.[20] During the hearing, Respondent represented himself with the assistance of two of his associates.[21] He testified in his own defense and called one other witness to testify.[22]

The BBO heard testimony regarding three separate counts of Respondent's misconduct during the hearing. The first count concerned a fee dispute arising during Respondent's representation of the same client in three separate matters (a workers' compensation claim, a tort claim, and an eviction action).[23]

The second count concerned two lawsuits that Respondent lodged in Massachusetts federal district court in December 2003 and April 2006 against contractors who had been building a vacation home for him in the Cayman Islands (the "Zimmer" matter).[24] The federal court dismissed the first suit for lack of personal jurisdiction, and the First Circuit Court of Appeals denied Respondent's appeal.[25] The federal court likewise dismissed the second Zimmer suit.[26] After Respondent filed a motion for reconsideration, the court assessed Rule 11 sanctions against him.[27]

The third count in the Massachusetts proceeding concerned a lien that predecessor counsel had filed in a workers' compensation matter in which Respondent served as successor counsel.[28] Bar counsel alleged that Respondent falsely testified at a deposition and that he directed his associate to draft—

13. C.R.C.P. 251.21(d)(1).

14. These facts are primarily drawn from the People's motion for summary judgment, Respondent's opposition, the admitted allegations of the People's complaint, and the certified attachments to the People's motion and complaint. While the Court has reviewed the nine exhibits to Respondent's motion because the People have not objected to their sufficiency, the Court finds these exhibits largely irrelevant to the standards set forth in C.R.C.P. 251.21. The 135 factual allegations in Respondent's motion also are of limited value, as they primarily concern the conduct underlying the Massachusetts charges. The People aver they can neither admit nor deny the vast majority of Respondent's allegations of fact, and they argue these allegations are immaterial to this reciprocal disciplinary proceeding. See generally Complainant's Resp.

15. Compl. ¶ 1; Am. Answer ¶ 1.

16. Complainant's M. Summ. J. ¶ 1; Respondent's Opp'n ¶ 1.

17. Compl. ¶ 2; Am. Answer ¶ 2.

18. See Compl. ¶ 3; Am. Answer ¶ 3. Respondent's registered business address is Thomas Graves Landing, 4 Canal Park, Cambridge, Massachusetts 02141.

19. Complainant's M. Summ. J. ¶ 3; Respondent's Opp'n ¶ 3.

20. Complainant's M. Summ. J. ¶ 4; Respondent's Opp'n ¶ 4.

21. Complainant's M. Summ. J. ¶ 5; Respondent's Opp'n ¶ 5.

22. Complainant's M. Summ. J. Ex. 2 at 3.

23. Compl. Ex. 1 at 2.

24. Compl. Ex. 1 at 2–3.

25. Compl. Ex. 1 at 2–3.

26. Compl. Ex. 1 at 3.

27. Compl. Ex. 1 at 3.

28. Compl. Ex. 1 at 3.

and his client to sign—a false affidavit and disclosure form indicating no outstanding liens had been placed upon the workers' compensation matter.[29]

In the course of the Massachusetts disciplinary proceedings, there were two procedural developments in particular that Respondent now alleges amounted to violations of his due process rights. First, bar counsel moved for an order of issue preclusion in regard to the *Zimmer* matter on December 31, 2009.[30] On January 19, 2010, the day before the hearing commenced, the hearing committee issued an order establishing, under standards governing issue preclusion, that Respondent had made an objectively false statement of fact to the federal court.[31] Sometime after the hearing, bar counsel filed two motions to reopen the disciplinary proceeding in order to permit the filing of two decisions that were issued after the close of the hearing.[32] In its report, the hearing committee noted that it could have simply taken official notice of these two decisions, but instead it permitted bar counsel's motions to clarify the record.[33] The second procedural development that Respondent complains of is bar counsel's failure to call several witnesses to testify as to the lien-related claims, after bar counsel listed those persons as witnesses.[34]

On September 17, 2010, the hearing committee submitted a hearing report to the BBO, recommending that Respondent be indefinitely suspended from the practice of law.[35] With respect to Count I, the hearing committee concluded that Respondent had failed to explain to his client the basis for his fee, neglected to place in escrow disputed funds, and neither accounted for nor credited to the client a retainer, in violation of Mass. R. Prof. C. 1.5(b), 1.15(b)(2)(ii), and 1.15(c)-(d).[36]

Under Count II, the committee determined that Respondent had filed a frivolous lawsuit and knowingly made false statements in violation of Mass. R. Prof. C. 3.1, 3.3(a)(1), and 8.4(d) & (h).[37] The hearing committee in the Massachusetts disciplinary matter determined that the only meaningful difference between the two *Zimmer* suits was that Respondent claimed in *Zimmer II* that the contractors resided in the Cayman Islands rather than Pennsylvania.[38] The hearing committee found Respondent had misrepresented to the federal court that the new complaint differed from the old complaint in that it relied on a certain case, when in fact Respondent had relied upon the same case in *Zimmer I*.[39] In addition, the hearing committee concluded that Respondent knowingly made false statements in his motion for reconsideration.[40]

29. Compl. Ex. 1 at 4.

30. Respondent's M. Summ. J. Statement of Undisputed Facts at ¶¶ 54–55. Among the few factual assertions made by Respondent and admitted by the People are those alleging that bar counsel filed the motion for an order of issue preclusion and that the order was allowed in part. Complainant's Resp. ¶¶ 53–57.

31. Complainant's M. Summ. J. Ex. 2 at 2. A supplemental order on issue preclusion was issued thereafter "allowing issue preclusion with respect to the false statement regarding the scheduling of the hearing...." Complainant's M. Summ. J. Ex. 2 at 3.

32. Bar counsel sought permission to file the decision in *Hug v. Gargano & Assocs. et al.*, 76 Mass.App.Ct. 520, 923 N.E.2d 1065 (Apr. 2, 2010), which affirmed the trial court's decision, and to file the docket sheet in *Hug v. Gargano et al.*, No. FAR–18811, which indicated that the Supreme Judicial Court denied Respondent's petition for further appellate review of *Hug*. Complainant's M. Summ. J. Ex. 2 at 3–4.

33. Complainant's M. Summ. J. Ex. 2 at 4. The hearing committee further stated that because bar counsel never sought issue preclusion with respect to the matters addressed in these decisions and the allegations in Count III, the committee would make its own findings of fact with respect to that count. Complainant's M. Summ. J. Ex. 2 at 4.

34. Respondent's M. Summ. J. ¶ 122.

35. Complainant's M. Summ. J. ¶ 6; Respondent's Opp'n ¶ 6.

36. Compl. Ex. 1 at 5 n. 1.

37. Compl. Ex. 1 at 5 n. 1.

38. Compl. Ex. 1 at 3.

39. Compl. Ex. 1 at 3.

40. Compl. Ex. 1 at 3.

Finally, in its analysis of Count III, the committee concluded Respondent had knowingly caused or permitted a client's affidavits to be prepared or filed despite their falsity and had intentionally given false, misleading, or deceitful testimony at a deposition, thereby violating Mass. R. Prof. C. 3.3(a)(1), 3.3(a)(4), 3.4(b), and 8.4(c)-(d), & (h).[41]

Respondent appealed on October 29, 2010.[42] On February 14, 2011, the BBO issued a decision rejecting Respondent's due process arguments and adopting the hearing committee's findings of fact, conclusions of law, and recommendation of indefinite suspension.[43]

On July 6, 2011, a single justice of the Commonwealth of Massachusetts Supreme Judicial Court for Suffolk County entered an order indefinitely suspending Respondent from the practice of law, with the opportunity to petition for reinstatement four years and nine months from the effective date of the order of suspension.[44] The single justice found that the BBO's findings were supported by substantial evidence, and he adopted the BBO's conclusions of law.[45] In addition, the justice rejected Respondent's contention that the proceedings had violated his due process rights.[46]

On November 21, 2011, the Supreme Judicial Court of Massachusetts entered an order affirming Respondent's indefinite suspension from the practice of law.[47] In that order, the Supreme Judicial Court rejected Respondent's contentions that the BBO's findings were not supported by substantial evidence, that his due process rights had been violated,

and that he had been entitled to a jury trial.[48] "In a disbarment proceeding," the court noted, "an attorney is entitled to procedural due process[,] which includes fair notice of the charges and an opportunity for explanation and defense."[49] The court held that Respondent was not deprived of these elements, nor did he enjoy any right to a jury trial in the disciplinary proceeding.[50]

### III. *LEGAL ANALYSIS*

#### Respondent's Motion for Summary Judgment

Respondent sets forth five primary arguments in his motion for summary judgment: (1) Count I of the Massachusetts complaint, alleging that Respondent charged an excessive fee, is deficient for several reasons, including that the complaining witness did not actually dispute Respondent's attorney's fees;[51] (2) Count II of the Massachusetts complaint is unfounded, in part because Respondent's associates endeavored to comply with the rules of the tribunal;[52] (3) bar counsel's motion for an order of issue preclusion regarding the *Zimmer* matter violated his due process rights and amounted to trial by ambush;[53] (4) the BBO proceedings were tantamount to star chamber proceedings and amounted to trial by ambush because opposing counsel did not comply with discovery rules;[54] and (5) Respondent was denied his rights to due process, to a fair and impartial trial, and to be confronted by the witnesses against him because opposing counsel failed to call several witnesses whom bar counsel

---

**41.** Compl. Ex. 1 at 5 n. 1.

**42.** Complainant's M. Summ. J. ¶ 7; Respondent's Opp'n ¶ 7.

**43.** Complainant's M. Summ. J. ¶ 9; Respondent's Opp'n ¶ 9; Complainant's M. Summ. J. Ex. 3.

**44.** Complainant's M. Summ. J. ¶ 10; Respondent's Opp'n ¶ 10; Compl. Ex. 1 at 11.

**45.** Complainant's M. Summ. J. ¶ 11; Respondent's Opp'n ¶ 11.

**46.** Complainant's M. Summ. J. ¶ 12; Respondent's Opp'n ¶ 12.

**47.** Complainant's M. Summ. J. ¶ 14; Respondent's Opp'n ¶ 14.

**48.** Complainant's M. Summ. J. ¶ 15; Respondent's Opp'n ¶ 15.

**49.** *In re Gargano*, 957 N.E.2d at 239 (quotation and citation omitted).

**50.** *Id.* at 239–40.

**51.** Respondent's M. Summ. J. at 3–5.

**52.** Respondent's M. Summ. J. at 5–7.

**53.** Respondent's M. Summ. J. at 7–11.

**54.** Respondent's M. Summ. J. at 11–13.

had listed.[55] For these reasons, Respondent argues the Massachusetts proceedings did not comport with C.R.S. § 24–4–104 or due process standards.[56]

No dispute exists that the Supreme Judicial Court of Massachusetts indefinitely suspended Respondent from the practice of law.[57] With limited exceptions, a "final adjudication in another jurisdiction of misconduct constituting grounds for discipline ... conclusively establish[es] such misconduct" for purposes of reciprocal discipline in Colorado.[58] Reciprocal discipline proceedings do not, as Respondent appears to believe, "afford an attorney the opportunity to relitigate misconduct allegations that have been heard and decided in another jurisdiction or to litigate the validity of the disciplinary proceeding in that jurisdiction." [59]

■ As such, the Court finds the first and second arguments advanced in Respondent's motion for summary judgment—essentially, that Counts I and II of the Massachusetts complaint were not well founded—to be immaterial to the instant proceeding. Moreover, Respondent's arguments that his conduct did not violate C.R.P.C. 1.5(a) [sic] or Colo. RPC 3.1, 3.4(c), or 8.4(d) and (h) are irrelevant here.[60] Whether Respondent's conduct amounted to a violation of the Colorado Rules of Professional Conduct is not material under C.R.C.P. 251.21.[61]

The third, fourth, and fifth arguments advanced in Respondent's motion for summary judgment—that his due process rights were violated—can be construed as cognizable challenges to the imposition of reciprocal discipline under C.R.C.P. 251.21(d).[62] The Court therefore examines whether Respondent has demonstrated as a matter of law that the Massachusetts proceeding deprived him of due process, relying upon the standards of due process provided under Colorado law.[63]

■ A respondent attorney is entitled to due process in disciplinary proceedings,[64] although there is no requirement that the lawyer be afforded the same constitutional safeguards as those granted a defendant in a criminal trial.[65] The Colorado Supreme Court has found that disciplinary proceedings comported with due process standards where respondents had notice of the proceedings, were present or were represented at the proceedings, and had the opportunity to

55. Respondent's M. Summ. J. at 13–18.

56. Respondent's M. Summ. J. at 18.

57. Complainant's M. Summ. J. ¶ 14; Respondent's Opp'n ¶ 14.

58. C.R.C.P. 251.21(a).

59. *In re Disciplinary Proceedings Against Selmer*, 227 Wis.2d 85, 595 N.W.2d 373, 379 (1999); *see also People v. Calder*, 897 P.2d 831, 832 (Colo. 1995) (holding that it would be improper for a Colorado hearing board to reweigh the credibility of the witnesses who testified in a disciplinary proceeding conducted in a sister jurisdiction).

60. Respondent's M. Summ. J. at 3, 5.

61. Indeed, Respondent's argument regarding the excessive fee claim also is irrelevant because the hearing committee found that bar counsel failed to establish Respondent violated the corollary rule in Massachusetts. Complainant's Resp. Ex. 2 at 10. Similarly, Respondent asserts with respect to Count II that he did not violate Colo. RPC 3.4(c), even though the hearing committee actually ruled that Respondent did not violate Mass. R. Prof. C. 3.4(c). Complainant's Resp. Ex. 2 at 19.

62. Respondent appears to have scant awareness of the legal standards governing this reciprocal disciplinary proceeding. Although Respondent makes two passing references to C.R.C.P. 251.21 in his arguments regarding issue preclusion in support of the proposition that a federal court is considered a foreign jurisdiction, he appears to rely more heavily on the assertion that his Massachusetts proceedings did not comport with C.R.S. § 24–4–104, a statute governing licensing by state agencies that is inapplicable to Colorado attorney discipline issues. *See* Respondent's M. Summ. J. at 18.

63. *See People v. Smith*, 937 P.2d 724, 727, 729 (Colo.1997) (measuring disciplinary procedure in federal court against Colorado's due process standards).

64. *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); *In re Egbune*, 971 P.2d 1065, 1072 (Colo.1999).

65. *People v. Morley*, 725 P.2d 510, 514 (Colo. 1986); *People v. Harfmann*, 638 P.2d 745, 747 (Colo.1981).

cross-examine witnesses and to introduce evidence.[66]

Here, it is undisputed that Respondent had notice of the disciplinary proceedings and that he represented himself at the hearing. Respondent, however, asserts he was not afforded adequate opportunities to cross-examine witnesses and to introduce evidence. The three arguments Respondent makes in this vein are addressed in turn.

■ First, Respondent argues that the hearing committee's order of issue preclusion in the *Zimmer* matter violated his due process rights and amounted to a trial by ambush.[67] In particular, Respondent complains that he "was denied an evidentiary hearing on the subject matter of the cause of action and had no opportunity to present oral argument on the procedural dismissal." [68] He further asserts that the motion was legally infirm as well as "untimely, subject to laches, [and] procedurally lacking in fair play and due process." [69] Respondent concedes, however, that he "filed [an] opposition to the BBO's motion for issue preclusion on January 7, 2010." [70]

The Court cannot find any support for Respondent's claim that the order of issue preclusion deprived him of due process, given that he had an opportunity to respond to the motion. Respondent cites no authority for the proposition that he had a right to an evidentiary hearing and to present oral argument,[71] nor does his motion contain any support for the assertion that laches should have barred bar counsel's motion.[72]

■ Next, Respondent claims the entire Massachusetts proceeding amounted to a "trial by ambush," arguing that opposing counsel violated discovery requirements by failing to share transcripts and statements from the witnesses whom bar counsel intended to call.[73] Respondent does not assert that he filed a motion to compel production of discovery or that the BBO failed to address the alleged discovery violations. Instead, he merely asserts—without citations to evidentiary support or relevant legal authorities—that opposing counsel deprived him of his due process rights. The Court can find no legal basis for the argument Respondent advances, and the Court therefore rejects Respondent's claim.

■ Respondent's third due process argument is that opposing counsel deprived him of due process by impeaching opposing counsel's own witness as a ploy to place otherwise inadmissible evidence before the BBO.[74] More specifically, Respondent claims bar counsel had listed several witnesses in the workers' compensation matter (Michael Fox ("Fox"), an insurance adjuster, and Christopher Hug ("Hug"), predecessor counsel) and then failed to call them at trial.[75] According to Respondent, rather than call these witnesses, bar counsel "relied upon a prior deposition of [ ] Fox asserting the accuracy of the testimony as being [ ] Fox's best memory and trying to impeach his cognizant awareness with a statement that this deponent was incorrect as to the identity of the person to

66. *People v. Williams*, 892 P.2d 885, 887 (Colo. 1995); *People v. Payne*, 738 P.2d 374, 375 (Colo. 1987); *see Calder*, 897 P.2d at 832 (approving a hearing board's findings that a respondent had failed to demonstrate a foreign jurisdiction's disciplinary proceedings violated due process standards, where the attorney had participated in five days of evidentiary hearings, followed by an appeal).

67. Respondent's M. Summ. J. at 7.

68. Respondent's M. Summ. J. at 7.

69. Respondent's M. Summ. J. at 10.

70. Respondent's M. Summ. J. at 10.

71. In fact, it appears that it is not uncommon for Colorado courts to rule on motions asserting issue preclusion based upon written motions for summary judgment. *See, e.g., Reynolds v. Cotten*, 274 P.3d 540, 541–42 (Colo.2012).

72. Respondent provides no basis for the Court to determine whether any of the elements for a claim of laches (full knowledge of the facts, unreasonable delay, and reliance by and prejudice to another) are present in his case. *See People v. Valdez*, 178 P.3d 1269, 1276 (Colo.App.2007) (quotation omitted).

73. Respondent's M. Summ. J. at 11–12.

74. Respondent's M. Summ. J. at 13–14.

75. Respondent's M. Summ. J. at 15.

whom he had spoken over the telephone."[76] Respondent further claims he was not afforded an opportunity to cross-examine Fox.[77] Respondent also asserts that Hug provided him with an affidavit in June 2010 in which he swore that he had never appeared before the BBO, which leads Respondent to the puzzling conclusion that bar counsel had deceived Respondent by falsely representing that they would call Hug as a witness.[78]

■ As with his "trial by ambush" defense discussed above, Respondent does not claim that he protested bar counsel's actions or sought relief from the BBO for these perceived due process violations. In fact, Respondent does not even allege that he lacked the opportunity to call Hug and Fox as witnesses. Nor does he cite legal authorities supporting his assertion that the alleged actions contravened any due process rights applicable in disciplinary proceedings. Although Respondent cites criminal law that he claims supports his legal positions,[79] disciplinary proceedings are not criminal proceedings, and respondents in disciplinary proceedings need not be "afforded the same constitutional safeguards applicable to a criminal trial."[80] Indeed, Respondent points the Court to no authority—nor can the Court independently locate such authority—showing that the criminal law principles he cites apply to attorney discipline proceedings. As such, the Court finds that Respondent's claim lacks both factual and legal support.

■ Finally, Respondent's argument that he should have been afforded a jury trial—raised only briefly in the conclusion to his motion for summary judgment [81]—lacks merit. The Colorado Supreme Court has ruled that the Sixth Amendment right to a trial by jury does not apply to attorney discipline proceedings.[82]

In sum, the evidence before the Court does not show any deprivation of Respondent's due process rights in the Massachusetts disciplinary proceedings. To the contrary, the hearing committee's report to the BBO was subject to an additional three levels of scrutiny, and none of the reviewing bodies found any violation of due process standards. Respondent has not carried his burden to show he is entitled to judgment as a matter of law, and the Court therefore denies his motion for summary judgment.

### The People's Motion for Summary Judgment

The People maintain in their motion for summary judgment that there are no material facts at issue and that the evidence conclusively establishes Respondent should be disciplined pursuant to C.R.C.P. 251.21. As noted in the analysis of Respondent's motion above, no dispute exists that the Supreme Judicial Court of Massachusetts indefinitely suspended Respondent from the practice of law.[83] With limited exceptions, a "final adjudication in another jurisdiction of misconduct constituting grounds for discipline ... conclusively establish[es] such misconduct" for purposes of reciprocal discipline in Colorado.[84]

The burden of proof thus shifts to Respondent to establish that a triable issue of fact remains in this matter.[85] Respondent contends in his opposition—as in his own motion for summary judgment—that the procedure followed in Massachusetts did not comport with the requirements of "fair play and due

---

76. Respondent's M. Summ. J. at 15.

77. Respondent's M. Summ. J. at 15.

78. Respondent's M. Summ. J. at 17; Respondent's M. Summ. J. Ex. 11.

79. Respondent's M. Summ. J. at 14.

80. *Morley,* 725 P.2d at 514.

81. Respondent's M. Summ. J. at 19.

82. *Smith,* 937 P.2d at 727.

83. Complainant's M. Summ. J. ¶ 14; Respondent's Opp'n ¶ 14.

84. C.R.C.P. 251.21(a).

85. *See Calder,* 897 P.2d at 832 (noting a hearing board in a reciprocal disciplinary proceeding properly placed the burden on the respondent to demonstrate by clear and convincing evidence that less severe discipline, or no discipline, should be imposed in Colorado).

process."[86] He also objects to imposition of reciprocal discipline because his suspension was "based upon alleged violation [sic] that never occurred and the complaint filed is at variance with the evidence."[87] Aside from unintelligible and unspecific references to documents in the BBO docket, Respondent rests upon mere allegations and denials and does not present any facts showing the existence of a genuine and material factual dispute. As such, his opposition fails altogether to meet the standards required of a response to a motion for summary judgment.[88]

Moreover, even had Respondent properly buttressed his arguments with factual and legal support, the Court would be unable to find his assertions sufficient to defeat entry of summary judgment in the People's favor. His argument that the alleged misconduct "never occurred" is a misplaced attempt to relitigate the determinations made in Massachusetts.[89] Among the reasons such relitigation would be improper is that this Court would have to reweigh the credibility of the witnesses who testified at the Massachusetts proceeding, and the Colorado Supreme Court has indicated such analysis is improper in reciprocal disciplinary proceedings.[90]

Finally, assuming Respondent's unspecified due process protestations in his opposition are based upon the due process concerns he raised in his own motion for summary judgment, the Court has already considered and rejected those arguments. As detailed above, the Court finds that Respondent had notice of the Massachusetts proceedings, he represented himself at the proceedings, and he had the opportunity to cross-examine witnesses and to introduce evidence.[91] Further, none of the more specific due process arguments presented in Respondent's motion— including that the order of issue preclusion was improperly issued, that opposing counsel violated discovery rules, that opposing counsel listed several witnesses and then improperly failed to call them, and that he was wrongfully deprived of a jury trial—are supported by evidence or by legal authorities. In accordance with the foregoing analysis, the Court grants summary judgment in favor of the People.[92]

## Disciplinary Sanction

As noted above, where a foreign jurisdiction imposes discipline upon an attorney licensed in Colorado and none of the exceptions listed under C.R.C.P. 251.21(d) are present, this Court is called upon to impose "the same discipline as was imposed by the foreign jurisdiction."[93] Although the Commonwealth of Massachusetts imposed an in-

**86.** Respondent's Opp'n ¶ 18.

**87.** Respondent's Opp'n ¶ 20.

**88.** *See Cont'l Air Lines*, 731 P.2d at 713.

**89.** *See Selmer*, 595 N.W.2d at 379. The Court does not read Respondent's statement as an attempt to invoke C.R.C.P. 251.21(d)(2), which permits this jurisdiction to decline to impose the same sanction as that imposed by another jurisdiction where "[t]he proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Hearing Board cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction." Respondent does not cite this rule, nor does he even generally reference the applicable stringent standard: namely, that the proof relied upon in Massachusetts must be wholly inadequate to justify a finding of misconduct. Instead, he merely disputes having engaged in rule violations.

**90.** *Calder*, 897 P.2d at 832.

**91.** *Williams*, 892 P.2d at 887; *Payne*, 738 P.2d at 375; *see Calder*, 897 P.2d at 832.

**92.** While C.R.C.P. 251.21(d) states that "[a]t the conclusion of proceedings brought under this Rule, the Hearing Board shall issue a decision," at least one other jurisdiction has held that challenges to reciprocal discipline based on adjudications by foreign jurisdictions may be decided as a matter of law. *See In re Disciplinary Proceedings Against Peiss*, 329 Wis.2d 325, 788 N.W.2d 636, 639 (2010) (holding that the office of lawyer regulation was entitled as a matter of law to the entry of judgment imposing reciprocal discipline); *Selmer*, 595 N.W.2d at 374 (approving entry of summary judgment on basis of reciprocal discipline when the respondent attorney failed to establish or demonstrate that the foreign adjudication deprived him of due process); *accord In re Smith*, 989 P.2d 165, 176 (Colo.1999) (rejecting respondent's contention that hearing board's presiding officer committed reversible error in granting summary judgment against him regarding certain defenses and mitigating circumstances).

**93.** C.R.C.P. 251.21(d).

definite suspension upon Respondent, an indefinite suspension is not among the forms of discipline available in Colorado.[94] Neither the People nor Respondent take any position in their filings as to what sanction would most closely parallel the discipline imposed in Massachusetts.

The Colorado Supreme Court faced a similar discrepancy in available sanctions in *People v. Smith*, where the Tenth Circuit Court of Appeals had indefinitely suspended an attorney for having filed a frivolous appeal, with reinstatement contingent upon paying court-ordered sanctions.[95] In the reciprocal disciplinary proceeding, the Colorado Supreme Court suspended the attorney's Colorado law license for nine months, with the condition that he pay the sanctions owed and gain reinstatement to federal practice prior to reinstatement of his Colorado license; the court also agreed to look favorably upon a petition for reinstatement filed earlier should the attorney meet the conditions prior to the expiration of the nine-month suspension.[96] The court noted that the effect of the Colorado discipline was "similar if not identical to the sanctions imposed by the court of appeals."[97]

Also instructive is the Colorado Supreme Court's decision in *People v. Nash*, a reciprocal discipline proceeding filed after the Ohio Supreme Court determined that the respondent had charged an illegal or clearly excessive fee.[98] The Ohio court ordered the respondent to serve a year-long suspension, with the proviso that the suspension would be lifted if the respondent refunded the contested fee to her client.[99] Because the respondent did refund that sum, she never in fact served any period of suspension in Ohio.[100] Given that the imposition of a suspension in Colorado would exceed the actual sanction imposed in Ohio, the Colorado Supreme Court chose to focus on the "practical effect" rather than the actual form of the Ohio Supreme Court's order.[101] The court therefore decided to publicly censure the respondent.[102]

Here, the Court determines that the closest available form of discipline in Colorado to that imposed in Massachusetts is a three-year suspension. Although a three-year suspension would permit Respondent to petition for reinstatement to the Colorado bar almost two years before he could petition for reinstatement in Massachusetts, the next closest alternative is a disbarment, which would not permit Respondent to petition for readmission to the bar for eight years.[103] Respondent would face a significantly greater hurdle in a readmission proceeding than in a reinstatement proceeding, given that a disbarred attorney must pass the written bar examination.[104] Although a three-year suspension is somewhat shorter than the suspension imposed in Massachusetts, the Court concludes a three-year suspension would be sufficiently stringent to protect the public, as Respondent cannot be reinstated unless he "prove[s] by clear and convincing evidence that [he] has been rehabilitated, has complied with all applicable disciplinary orders ..., and is fit to practice law."[105] Accordingly, a three-year suspension of Respondent's Colorado law license is the most appropriate sanction in this reciprocal disciplinary matter.

---

94. *Compare* Mass. S.J.C. Rule 4:01 § 4 ("Discipline of lawyers may be (a) by disbarment, resignation pursuant to section 15 of this rule, or suspension by this court; (b) by public reprimand by the Board; or (c) by admonition by the bar counsel.") *with* C.R.C.P. 251.6 (limiting available forms of discipline to disbarment, suspension for a definite period of time not to exceed three years, public censure, and private admonition).

95. 937 P.2d 724, 725 (Colo.1997).

96. *Id.*

97. *Id.* at 731.

98. 873 P.2d 764, 765 (Colo.1994).

99. *Id.*

100. *Id.*

101. *Id.*

102. *Id.*

103. C.R.C.P. 251.6(a).

104. C.R.C.P. 251.29(a).

105. C.R.C.P. 251.29(b).

## IV. *ORDER*

The Court therefore **ORDERS**:

1. The Court **DENIES** "Respondent's Motion for Summary Judgment" and **GRANTS** "Complainant's Motion for Summary Judgment."

2. Paul A. Gargano, attorney registration number 24262, is **SUSPENDED FOR THREE YEARS.** The suspension **SHALL** take effect only upon issuance of an "Order and Notice of Suspension." [106]

3. The two-day hearing scheduled to commence on June 26, 2012, at 9:00 a.m. is **VACATED.**

4. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before Friday, June 22, 2012.** No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within seven days, unless otherwise ordered by the Court.

5. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fourteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than fourteen days thereafter.

6. To the extent applicable, Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation. Respondent also **SHALL** file with the Court, within fourteen days of the issuance of the "Order and Notice of Suspension," an affidavit complying with C.R.C.P. 251.28(d).

---

106. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.